2016 IL App (5th) 150170

NO. 5-15-0170

NOTICE
Opinion filed March 21, 2016.
Modified upon denial of rehearing June 13, 2016.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TERRY REED and CAROLYN REED, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Shelby County. |
| | ) | |
| v. | ) | No. 11-L-19 |
| | ) | |
| COUNTRY PLACE APARTMENTS-MOWEAQUA I, L.P.; | ) | |
| COUNTRY PLACE APARTMENTS-MOWEAQUA II, L.P.; | ) | |
| PROFESSIONAL PROPERTY MANAGEMENT, LLC; | ) | |
| COUNTRY PLACE GP, LLC, a/k/a Country Place | ) | |
| Apartments, GP, LLC, d/b/a Moweaqua Country Place | ) | |
| Apartments I and II; and UNKNOWN OWNERS, | ) | |
| | ) | |
| Defendants-Appellees/Third-Party Plaintiffs | ) | |
| and Separate Appellants | ) | |
| | ) | Honorable |
| (Gary Powell, d/b/a Powell Lawn Care, Third-Party | ) | Allen F. Bennett, |
| Defendant and Separate Appellee). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion. Presiding Justice Schwarm and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Terry Reed and Carolyn Reed, appeal the order of the circuit court of Shelby County that granted the motion for summary judgment filed by the defendants: Country Place Apartments-Moweaqua I, L.P.; Country Place Apartments-Moweaqua II,

1

L.P., Professional Property Management, LLC; Country Place GP, LLC, also known as Country Place Apartments, GP, LLC, doing business as Moweaqua Country Place Apartments I and II; and unknown owners. The defendants, as third-party plaintiffs and separate appellants, appeal the portion of that order that granted the motion for summary judgment filed by the third-party defendant, Gary Powell,[1] doing business as Powell Lawn Care (Powell). For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                   FACTS

¶ 3    In the plaintiffs' third amended complaint (the complaint), which is the complaint upon which summary judgment was granted, the plaintiffs allege that Terry Reed was injured when he slipped and fell on ice on a ramp outside of an apartment building owned and/or managed by the defendants, said ramp leading from the apartment building to its parking lot. The complaint alleges severe personal injuries to Terry and loss of consortium with regard to Carolyn. According to the complaint, other pleadings, and information adduced in discovery, the plaintiffs and other family members arrived at the apartment building between 5:30 p.m. and 6 p.m. on December 24, 2010, to visit a relative who was a resident of the building. At the time they entered the apartment

---

[1]In his deposition, Mr. Powell indicated that his first name is "Greg," not "Gary." To the extent he has been misidentified in the pleadings, there is no indication in the record on appeal that he has taken steps in the trial court to correct that misidentification, although the trial judge did note the name discrepancy in the order presently on appeal.

building, it had been sleeting and raining for approximately two hours. While they were inside the apartment building, the sleet and rain turned to snow. The family members alleged that on the night in question, the gutter that hung over the passageway that led to the ramp and the parking lot was packed with snow and was, as one family member put it, "dripping a constant drip" onto the ramp. The plaintiffs and other family members left the building, and Terry fell, between 10:30 p.m. and 10:45 p.m. Carolyn testified that at the time Terry fell, the surface was completely slick. Terry testified that when he arrived at the apartment building, he had no trouble getting up the sidewalk but that it was slippery, and the traction was like a sheet of ice, when he left.

¶ 4 The complaint alleges that the ice upon which Terry slipped was underneath the freshly fallen snow, and that, "at all times relevant, there was a leak in the down spout and guttering system over the passage way exiting to the ramp in question, which allowed substantial quantities of water to drip onto the sidewalk and find its way down the ramp, under the existing snowfall." The complaint also alleges that the condition existed for a sufficient period of time for the defendants to have knowledge of it and to correct it. The complaint alleges that the defendants breached, in multiple ways, their duty to prevent unnatural accumulations of ice on the property, resulting in the personal injury and loss of consortium damages alleged.

¶ 5 In response to an earlier complaint, the plaintiffs' second amended complaint, the defendants had filed a motion for summary judgment, contending that because the location of the apartment building was residential, and because the second amended complaint alleged, *inter alia*, injuries and damages resulting from negligent snow and ice

3

removal efforts by the defendants, the defendants were immune from liability under the provisions of the Illinois Snow and Ice Removal Act (the Act) (745 ILCS 75/0.01 *et seq.* (West 2010)), notwithstanding the allegations of negligence with regard to a purportedly leaking downspout and guttering system. The motion also alleged other grounds for summary judgment. Powell, who had been added to the case as a third-party defendant by the defendants following discovery, and who had provided gutter cleaning and snow and ice removal services at the apartment building (including, he testified in his deposition, snow and ice removal services on the date Terry fell), had previously filed a motion for summary judgment in which Powell made similar contentions with regard to the applicability of the Act and in which Powell contended he owed no duty to the plaintiffs.

¶ 6     In response to the motions for summary judgment, the plaintiffs, *inter alia*, asked the court for leave to file the complaint, which removed all allegations of negligence related to snow and ice removal efforts, but maintained the other allegations, as described above. Accordingly, the posturing of the plaintiffs' theory of the case at the time the court ruled on the motion for summary judgment was, essentially, that the snow and ice removal efforts undertaken hours before Terry's fall were irrelevant, because it was a premises defect, in conjunction with the rain, sleet, and snow that fell shortly before Terry's fall, that led to an unnatural accumulation of ice that in turn caused the fall and the accompanying injuries. In a five-page written order entered on April 7, 2015, the trial court granted the plaintiffs' motion for leave to file the complaint, ruling that the complaint did not "change or alter the grounds for summary judgment which are set forth

in the respective motions" therefor, and explicitly stating that the court would consider the motions in the context of the allegations of the complaint, rather than those contained in the second amended complaint. The court ruled that because the plaintiffs claimed that Terry "fell as a consequence of an accumulation of snow and/or ice on December 24, 2010[,] *after* attempts to remove snow and ice" (emphasis in original), the condition existing at the time Terry fell "was that which was created or contributed to by those snow and ice removal efforts." Therefore, the court reasoned, the Act provided immunity for the defendants and for Powell, because the complaint "ultimately seeks recovery from the [defendants] for acts or omissions on their part which were caused by acts or omissions resulting in the snow and icy conditions upon which" Terry fell. Accordingly, the court granted both motions for summary judgment. This timely appeal followed.

¶ 7                                      ANALYSIS

¶ 8    A motion for summary judgment should be granted if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2015 IL App (1st) 142804, ¶ 24 (citing 735 ILCS 5/2-1005(c) (West 2010)). Although summary judgment can play an important role in promoting the prompt administration of justice, it is nevertheless a drastic measure and should be granted only where the moving party's right is so clear as to be free from doubt. *Id.* We review *de novo* a trial court order granting summary judgment. *Id.* Moreover, we review *de novo* the interpretation of a statute, as that is a question of law. *Id.*

5

¶ 9     On appeal, the plaintiffs contend the trial court erred when it granted the defendants' motion for summary judgment, because once the plaintiffs filed the complaint, which removed all the allegations that had been contained in the second amended complaint of negligence related to snow and ice removal efforts, the Act was no longer applicable to this case, and the plaintiffs should have been allowed to move forward with their common-law claims that the defendants breached, in multiple ways, their duty to prevent unnatural accumulations of ice on the property, as a result of the alleged negligence of the defendants with regard to the purportedly leaking downspout and guttering system.  In support of this contention, the plaintiffs point out that because the Act was passed in derogation of the common law, it must be strictly construed; therefore, according to the plaintiffs, although the plain language of the Act immunizes actions on residential properties that in the past would have supported a common-law action alleging negligent snow and ice removal efforts, the Act was never intended to, and in fact does not, immunize actions on residential properties related to allegations of negligence with regard to premises defects that, as alleged in the case at bar, caused unnatural accumulations of ice to form, said ice then causing injury.  According to the plaintiffs, the latter common-law actions survive the General Assembly's passage of the Act.

¶ 10    The defendants' response to the plaintiffs' argument on appeal is twofold: (1) the summary judgment in favor of the defendants should be upheld because, even though the trial court did not base its order upon these grounds, the record demonstrates that the plaintiffs did not establish facts from which a duty owed by the defendants to the

6

plaintiffs could be inferred; and (2) the Act immunizes the defendants, because to the extent Terry was injured after slipping on an unnatural, rather than natural, accumulation of ice, the removal of all allegations of negligence related to snow and ice removal efforts does not change the *fact* that Terry's injury occurred *after* snow and ice removal efforts from residential property, that the plaintiffs admitted "were not willful and wanton," had been made in the area by the defendants, said efforts fully immunizing the defendants, notwithstanding the allegations of negligence with regard to a purportedly leaking downspout and guttering system.  In support of the latter contention, the defendants posit in their brief on appeal that the application of the Act, in the context of a motion for summary judgment, must be based on the underlying *facts* of the event in question, "regardless of the content of [the plaintiffs'] *allegations*."  (Emphasis in original.)

¶ 11   With regard to the issue of duty raised by the defendants, the crux of the defendants' position is that in the case at bar, to survive summary judgment under the standards set forth in section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)), the plaintiffs were required to "either show a direct link between the dripping gutter and the ice that caused [Terry] to slip, or provide circumstantial evidence through an expert" that would demonstrate the same.  Without such, according to the defendants, there could be no "finding of an unnatural or aggravated condition," and thus no finding of a duty on the part of the defendants to the plaintiffs, because under Illinois law there is no duty to remove natural accumulations of snow or ice.  The defendants posit that this court must answer the question of duty before proceeding to the question of immunity under the Act.

7

¶ 12    The plaintiffs respond to this argument by contending that the duty in question in this case relates directly to the allegations, made in the complaint, of negligence with regard to premises defects, a common-law duty that supports a common-law claim that is wholly independent of the Act.  The plaintiffs contend the Act does nothing to negate the longstanding common-law rule that "a business owes the public the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition."  The plaintiffs maintain that this duty exists as a matter of law, and that it is a question of fact, to be left to a jury, whether the allegations in the complaint in this case, supported by circumstantial evidence (including that found in the depositions that are already part of the record on appeal), entitle the plaintiffs to recovery.  Moreover, the plaintiffs contend that because the trial court did not base its order on anything related to duty, this court should not affirm the trial court's decision on those alternative grounds.  In support of the latter proposition, the plaintiffs cite *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2015 IL App (1st) 142804, ¶ 45, wherein our colleagues in the First District declined to affirm the trial court's summary judgment ruling on the basis of the alternative grounds proposed by the appellees because the court concluded that there was "nothing in the decision of the trial court which evidences a ruling on defendants' alternative grounds," and therefore the court believed it should confine its "decision to the basis of the motion actually considered and ruled upon by the trial court."

¶ 13    For reasons discussed in much more detail below, we agree with the plaintiffs that the duty in the case at bar relates directly to the allegations, made in the complaint, of negligence with regard to premises defects, a common-law duty that supports a common-

8

law claim that is wholly independent of the Act. We also agree that, in light of that clarification with regard to what duty is involved herein, the plaintiffs did in fact establish facts from which a duty owed by the defendants to the plaintiffs could be inferred, and, as discussed in more detail below, evidence that supports their theory of the case. Accordingly, we reject the alternative grounds upon which the defendants request that we affirm the summary judgment in their favor.

¶ 14 We turn, therefore, to the issue of immunity under the Act. With regard to the applicability of the Act, the parties agree that three recent Illinois decisions potentially will assist this court in our analysis of the issues related to the Act in the case at bar: *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2015 IL App (1st) 142804; *Ryan v. Glen Ellyn Raintree Condominium Ass'n*, 2014 IL App (2d) 130682; and *Greene v. Wood River Trust*, 2013 IL App (4th) 130036. The first, and most recent, of these cases is *Murphy-Hylton*. Therein, our colleagues in the First District framed the issue before them as "whether the immunity provided by the Act only applies to those who create a danger by negligent efforts to remove natural accumulations of ice and snow or instead applies to anyone whose defective property, whether because of factors such as negligent landscaping design or maintenance, creates an unnatural accumulation of ice or snow which causes injury." 2015 IL App (1st) 142804, ¶ 1.

¶ 15 In *Murphy-Hylton*, the plaintiff was injured when, as she walked upon a sidewalk outside of her apartment building, "she slipped on a patch of ice about the size of an 8½ by 11 inch piece of paper." *Id*. ¶ 4. She testified that she knew it was ice that she had slipped upon because as she lay on the ground waiting for paramedics to arrive, she could

9

feel ice on the sidewalk. *Id*. She also testified that: (1) the sidewalk was clear and did not appear to be wet; (2) there was no salt or other material present; and (3) there was no precipitation on the day she fell, the last snowfall she remembered being "a week or so" prior to that day. *Id*. Other evidence before the court indicated that the last time snow removal efforts had been made at the location was 11 days prior to the plaintiff's fall. *Id*. ¶ 9.

¶ 16 The plaintiff's theory of the case in *Murphy-Hylton* was that on each side of the sidewalk in question, there were areas " 'where water would settle, and it was from the drainage from either [of] the downspout things, and it would kind of accumulate there.' " *Id*. ¶ 5. She posited that at times the water would "collect and stay on the sidewalk" rather than continuing to drain onto the parking lot. *Id*. Because there was no ice anywhere else in the area, it was her belief that the ice she had slipped upon was the result of previous draining and freezing, although she conceded there were other possible explanations for the ice. *Id*. Other lay witnesses made similar observations about the sidewalk and the alleged drainage/freezing issues. *Id*. ¶¶ 6-7. Accordingly, the plaintiff's cause of action was based upon negligent maintenance of the property by the defendants, and contained no allegations regarding snow or ice removal efforts. *Id*. ¶ 1.

¶ 17 The defendants in *Murphy-Hylton* moved for summary judgment, contending, *inter alia*, that the Act applied and provided them with immunity. *Id*. ¶ 12. Ultimately, the trial judge agreed with the defendants, noting that there had been "recent" snow and ice removal efforts on the sidewalk in question, and that the plaintiff could not identify the source of the ice upon which she fell. *Id*. ¶ 18. The judge stated that in his opinion,

" 'the issue essentially is where did the unnatural accumulation come from and what was it related to.' " *Id.* The judge ruled that because the Act does not by its language limit itself only to negligent snow and ice removal, rather than an unnatural accumulation from a building defect, or other cause, the Act could not be read so narrowly as to include immunity only when negligent snow or ice removal was at issue. *Id.* ¶ 21.

¶ 18  On appeal, the *Murphy-Hylton* plaintiff asserted, as she had in the trial court, "that the ice that caused her fall was the result of negligent maintenance or construction of the premises at issue," and that therefore there could be no immunity under the Act. *Id.* ¶ 24. The *Murphy-Hylton* court began its analysis by providing an overview of the text of the Act itself, noting that section 1 of the Act states that because it is the public policy of the state of Illinois that those responsible for residential units should " 'be encouraged to clean the sidewalks abutting their residences of snow and ice,' " it would be " 'undesirable for any person to be found liable for damages due to his or her efforts in the removal of snow or ice from such sidewalks,' " with the exception of acts that were wrongful, willful, or wanton. *Id.* ¶ 25 (quoting 745 ILCS 75/1 (West 2010)). The court noted that section 2 of the Act provides that a properly authorized individual " 'who removes or attempts to remove snow or ice from sidewalks abutting [a residential] property shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton.' " *Id.* (quoting 745 ILCS 75/2 (West 2010)).

¶ 19  Before setting out to interpret the language of the Act and its scope, the *Murphy-Hylton* court set forth some historical context for the Act, noting that at common law two

11

distinct duties to prevent unnatural accumulations of snow and ice existed: (1) the duty to prevent such unnatural accumulations that are " 'the direct result of the owner's clearing of the ice and snow,' " and (2) the duty to prevent such unnatural accumulations that are " 'caused by design deficiencies that promote unnatural accumulations of ice and snow.' " *Id.* ¶ 26 (quoting *Webb v. Morgan*, 176 Ill. App. 3d 378, 382-83 (1988)). Because the Act was passed in derogation of the common law, the *Murphy-Hylton* court concluded that the Act must be interpreted narrowly, as evidenced by the general rule of law that when the General Assembly intends to abrogate the common law, that intent must be clearly and plainly expressed, and a reviewing court may not presume such an intent from language that is ambiguous. *Id.* ¶ 27.

¶ 20    The *Murphy-Hylton* court then noted that to reach his decision, the trial judge had considered both *Ryan v. Glen Ellyn Raintree Condominium Ass'n*, 2014 IL App (2d) 130682, and *Greene v. Wood River Trust*, 2013 IL App (4th) 130036. *Id.* ¶ 28. The *Murphy-Hylton* court noted that in *Greene*, the plaintiff, who slipped and fell near the icy entrance to her residence, alleged many theories of negligence, including those related to an allegedly defective or improperly maintained roof, gutters, and downspout, but did not allege negligent snow or ice removal efforts. *Id.* ¶ 29. The *Murphy-Hylton* court also noted that the *Greene* court ultimately held that " 'the plain language of the Act does not provide immunity for injuries if the unnatural accumulation of ice was caused by defective construction or improper or insufficient maintenance of the premises, and not by snow and ice removal efforts.' " *Id.* ¶ 30 (quoting *Greene*, 2013 IL App (4th) 130036, ¶ 23). In so doing, the *Greene* court recognized that to rule otherwise would be to read

12

the Act to abrogate not only the common-law duty to prevent unnatural accumulations that are the direct result of the owner's clearing of the ice and snow, but also to abrogate the common-law duty to prevent such unnatural accumulations that are caused by design deficiencies that promote unnatural accumulations of ice and snow. *Id.* ¶ 30. If the court read the Act so broadly, it would be both "overturning a common law remedy, which is not favorable," and "repealing a common law remedy by implication, which is not favored" (internal quotation marks omitted). *Id.* ¶¶ 30-31.

¶ 21 The *Murphy-Hylton* court then turned to *Ryan v. Glen Ellyn Raintree Condominium Ass'n*, 2014 IL App (2d) 130682, in which the plaintiff had alleged both: (1) a failure to correct a design flaw, in an awning, that allowed water to drip and freeze, causing the plaintiff to slip and be injured on the resulting patch of ice; and (2) ineffective snow and ice removal efforts with regard to the patch of ice upon which the plaintiff slipped. *Id.* ¶ 32. It noted that the *Ryan* court employed a theory of " 'immediate negligence' " in which the *Ryan* court noted that when both a premises defect and negligent snow and ice removal are alleged, the negligent snow and ice removal will always be the immediate cause of the injury in question, because " '[a]fter all, an owner of property with myriad defects that promote unnatural accumulations of snow or ice can avoid liability as long as the owner clears or neutralizes such accumulations before they cause injury.' " *Id.* ¶ 33 (quoting *Ryan*, 2014 IL App (2d) 130682, ¶ 12). The *Ryan* court concluded that its ruling was consistent with the clear and unambiguous intent of the General Assembly, noting that because in section 2 of the Act, the General Assembly referred to acts *or omissions* in snow removal efforts, a property owner's failure to clear

13

ice formed by water that dripped from a defective awning would be an example of an *omission* for which immunity existed under the Act. *Id*. ¶¶ 34-35.

¶ 22 The *Murphy-Hylton* court noted that the trial judge below had relied upon *Ryan*, and had stated that the plaintiff's narrow reading of the Act was contrary to the wide breadth of immunity the General Assembly intended to create with the Act. *Id*. ¶ 36. The *Murphy-Hylton* court disagreed, holding that "the Act does not apply to cases where the plaintiff's complaint is silent as to negligent snow removal efforts but rather is grounded in allegations that defendants negligently maintained or constructed their premises." *Id*. ¶ 39. Accordingly, the *Murphy-Hylton* court found no immunity "for the simple reason that plaintiff's complaint does not contain any allegations of negligence relating to snow or ice removal efforts." *Id*. The *Murphy-Hylton* court specifically adopted the *Greene* court's interpretation of the Act, finding it "to be convincing and well-reasoned." *Id*. ¶ 41. The *Murphy-Hylton* court emphasized that section 1 of the Act provides "a clear, concise statement of the conduct, *i.e.*, the removal of ice and snow, that the Act intends to promote," and that the Act as a whole "requires that the snow or ice that causes a plaintiff's injuries must be the result of the acts or omissions in defendants' actual snow removal efforts," rather than the result of an underlying premises defect. *Id*.

¶ 23 The *Murphy-Hylton* court took issue with *Ryan* for several reasons, including because the theory of "immediate negligence" has no basis in previous Illinois decisions and appeared to the *Murphy-Hylton* court to be overly broad, considering the fact that the Act's plain and unambiguous language "makes no mention of protecting any type of negligence outside of the ordinary negligence that results in an unnatural accumulation

14

after snow removal efforts." *Id.* ¶ 42. To conclude otherwise would be to assume that the General Assembly "intended to protect property owners who negligently maintain, construct, or design their premises" and would require the court "to read into the Act language that is not expressly stated and that we are prohibited from doing when a statute, such as the Act, was established in derogation of the common law." *Id.*

¶ 24 With regard to the application of these three cases to the facts presented to us in the case at bar, the defendants posit that the cases support their position. The defendants contend that in *Greene*, not only were there no allegations in the pleadings filed by the plaintiff regarding negligent snow and ice removal efforts, but there were also no underlying *facts* in *Greene* with regard to snow removal. Accordingly, the defendants contend, *Greene* is a much different case than is the case at bar, where the underlying facts demonstrate that snow and ice removal efforts were undertaken on December 24, 2010, prior to Terry's fall. Moreover, the defendants encourage this court to adopt the "immediate negligence" theory put forward in *Ryan*, and to conclude, pursuant thereto, that if any human negligence was involved in this case, it was the immediate negligence of the December 24, 2010, snow and ice removal efforts of Powell and/or other agents of the defendants, which are immunized under the Act, rather than the alleged premises defect. With regard to *Murphy-Hylton*, the defendants contend it is both "factually and procedurally inapt," as it was decided on a complaint which contained no allegations of snow and ice removal efforts and a factual situation in which it had been "more than a week" since the last snowfall. The defendants contend that it is simply not plausible, in the case at bar, to contend that the ice upon which Terry slipped was the result of a

15

premises defect rather than the "pervasive" rain, sleet, and snow that fell shortly before Terry's fall, because it is physically impossible to determine which source produced the ice, and therefore whether it was a natural accumulation or an unnatural accumulation. Although not put forward explicitly, it would appear that an alternative argument the defendants attempt to advance is that even if this court were to determine that the Act does not abrogate a common-law claim for a premises defect, under the facts of this case, such a claim cannot survive the defendants' motion for summary judgment.

¶ 25    We begin by noting that we agree with the plaintiffs that the reasoning put forward in both *Murphy-Hylton* and *Greene* supports the conclusion that the plain and unambiguous language of the Act evidences the intent of the General Assembly to use the Act to abrogate the common-law duty to prevent unnatural accumulations of ice and snow that are the direct result of the owner's clearing of the ice and snow, and that, simultaneously, the plain and unambiguous language of the Act provides no basis to conclude that the General Assembly also intended to abrogate the common-law duty to prevent such unnatural accumulations that are caused by design deficiencies that promote unnatural accumulations of ice and snow.  Because causes of action related to the latter duty survived the General Assembly's passage of the Act, the plaintiffs in the case at bar are correct in their assertion that the trial judge erred when he granted summary judgment to the defendants under a broad reading of the Act.  In the complaint, the plaintiffs had removed all allegations related to negligent snow and ice removal, and expressly wished to move forward only on their allegations of negligent maintenance of the gutter system.

16

¶ 26    With regard to the defendants' alternative argument that even if, as we have concluded, the Act does not abrogate the common-law claim for a premises defect, under the facts of this case, such a claim cannot survive the defendants' motion for summary judgment, we agree with the plaintiffs that this is a jury question, because genuine issues of material fact exist with regard to this claim, particularly as to whether the accumulation of ice was natural or unnatural.  We do not conclude, as the defendants appear to urge us to conclude, that the plaintiffs' theory of the case as postured in the complaint (which, as described above, is essentially that the snow and ice removal efforts undertaken hours before Terry's fall were irrelevant, because it was a premises defect, in conjunction with the "pervasive" rain, sleet, and snow that fell shortly before Terry's fall, that led to an unnatural accumulation of ice that in turn caused the fall and the accompanying injuries), and as supported by the evidence adduced so far (including testimony that water was dripping steadily from the gutter to the ramp, which contradicts the report prepared by the defendants' retained expert), is so improbable that no reasonable jury could find for the plaintiffs.

¶ 27    In their separate appeal, the defendants state that they filed that appeal "[o]ut of an abundance of caution," because they believe the manner in which the trial court proceeded in granting both motions for summary judgment created "two overlapping and potentially inconsistent judgment orders."  The defendants contend the trial court erred when it granted Powell's motion for summary judgment, because if this court reverses the summary judgment granted in favor of the defendants, questions of fact will remain regarding Powell's role in the cleaning of the gutter system and his attempted removal of

the snow and ice on the date in question. Powell responds that this court should affirm the granting of his motion for summary judgment because: (1) he is immunized by the Act, as per the allegations in both the complaint and the third-party complaint; and (2) in the alternative, even if the Act does not apply in this case, because Powell claims that Powell had no contractual obligation to maintain the gutters in question, and because the defendants have not refuted that claim, the defendants have not demonstrated that Powell owed a duty to them, or a duty to the plaintiffs. We agree with the defendants. Because the Act bars claims against the defendants for negligent snow and ice removal, so too does the Act bar such claims by the defendants against Powell. However, because the plaintiffs may move forward against the defendants with the plaintiffs' common-law claims related to a premises defect, so too may the defendants move forward with their third-party complaint allegations that Powell breached his contractual duty to the defendants. Nevertheless, the defendants are limited to their allegation that Powell negligently maintained the gutters in question when he cleaned them on November 30, 2010. It is clear from Powell's unrebutted testimony that other than his contractual obligation to clean the gutters on that date, he had no other obligation to maintain or repair the gutters in question. Of course, on remand, Powell may persist in his defense against that allegation.

¶ 28                              CONCLUSION

¶ 29    For the foregoing reasons, we reverse the portion of the circuit court of Shelby County's order that granted summary judgment to the defendants on the plaintiffs' common-law premises defect claims. We affirm the portion of the circuit court's order

18

that granted summary judgment to Powell with regard to all allegations in the third-party complaint except that we reverse that portion of the order only with regard to the allegation that Powell negligently maintained the gutters in question, which as explained above, is limited on remand to Powell's cleaning of the gutters on November 30, 2010. We remand for further proceedings not inconsistent with this opinion.

¶ 30    Affirmed in part and reversed in part; cause remanded.

2016 IL App (5th) 150170

NO. 5-15-0170

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TERRY REED and CAROLYN REED,<br><br>      Plaintiffs-Appellants,<br><br>v.<br><br>COUNTRY PLACE APARTMENTS-MOWEAQUA I, L.P.;<br>COUNTRY PLACE APARTMENTS-MOWEAQUA II, L.P.;<br>PROFESSIONAL PROPERTY MANAGEMENT, LLC;<br>COUNTRY PLACE GP, LLC, a/k/a Country Place<br>Apartments, GP, LLC, d/b/a Moweaqua Country Place<br>Apartments I and II; and UNKNOWN OWNERS,<br><br>      Defendants-Appellees/Third-Party Plaintiffs<br>      and Separate Appellants<br><br>(Gary Powell, d/b/a Powell Lawn Care, Third-Party<br>Defendant and Separate Appellee). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the<br>Circuit Court of<br>Shelby County.<br><br><br>No. 11-L-19<br><br><br><br><br><br><br><br><br><br><br>Honorable<br>Allen F. Bennett,<br>Judge, presiding. |

_____

**Opinion Filed:**            March 21, 2016
**Modified upon denial of rehearing:**      June 13, 2016

_____

| | |
|---|---|
| **Justices:** | Honorable James R. Moore, J.<br><br>Honorable S. Gene Schwarm, P.J., and<br>Honorable Thomas M. Welch, J.,<br>Concur |

_____

| | |
|---|---|
| **Attorney**<br>**for**<br>**Appellants** | William E. Hourigan, 1632 North Union Street, Decatur, IL 62526<br>(attorney for Terry and Carolyn Reed) |

_____

| | |
|---|---|
| **Attorneys**<br>**for**<br>**Appellees** | Jennifer L. Wolfe, David B. Mueller, Caroline J. Cassidy, Cassidy &<br>Mueller, P.C., 416 Main Street, Suite 323, Peoria, IL 61602<br>(attorneys for Professional Property Management, LLC, *et al.*);<br>Stephen R. Kaufmann, Michael P. Murphy, HeplerBroom, LLC,<br>4340 Acer Grove Drive, Suite A, Springfield, IL 62711 (attorneys<br>for Greg Powell, d/b/a Powell Lawn Care) |

_____